Our last case this morning is Centripetal Networks v. Keysight Technologies, 2024-2246. Mr. Lerman. Thank you very much, Your Honor. May it please the Court, Dan Lerman for Centripetal Networks. I'd like to focus on two issues here today. The first is the Board's construction of the corresponding action limitation. And the second is the Board's holding with regard to Altman that it discloses that same limitation. The Board construed performing a corresponding action to include, quote, merely allowing a packet to be re-encrypted and transmitted. It therefore held that the IPUG reference anticipated the claim limitation because IPUG discloses, quote, merely allowing a packet to be transmitted. But merely allowing a packet is not a corresponding action. It is the absence of a corresponding action. And the patent makes this clear in several ways. First, the specification tells us that the corresponding action is the application of what it calls intermediating logic. It does this because it discloses a yes pathway and a no pathway in the patent. Merely allowing a packet to proceed without more is the no pathway. That is the pathway where there is no application of intermediating logic. The corresponding action corresponds to the yes pathway. This is in Figure 1 of the specification. So the patent makes clear that there's a distinction between merely allowing and allowing plus the application of intermediating logic. And it makes clear that the corresponding action is the application of intermediating logic. So I'm sorry. I'm no patent lawyer, so bear with me. But if they're unencrypting it and then re-encrypting it and sending it on, right, something must have happened in the middle. No, Your Honor. I mean, the board held that the only action here is merely allowing. It didn't say that it's the application of any decision or access policy and we could turn to that. The only thing that happens in the middle is just allowing. That is what the specification makes clear, and that's what the claim language makes clear. The claim language makes clear that the corresponding action needs to be different from the separately claimed limitations of re-encrypting and transmitting. But why are they allowing it if they haven't done something in the middle? Like, isn't it sort of? The specification tells us that it might have decrypted it for no reason, and therefore the system might have wasted its time. But the specification makes very clear that in that case, when it is allowing it to proceed without taking any intermediating logic, it is not applying a corresponding action within the meaning of the patent. The intermediating logic, it gives some examples. We can see that they're not exclusive, but the examples are things like transforming the data. So you could be altering it in some way or removing a header or you could be redirecting it or, as the board found, blocking it. Or it could be logging and capturing the data in some way. These are all the examples of what the patent calls intermediating logic. And it says that responds to the correspondence. But if you're looking at it, like, you unencrypted it by accident. You decided that you unencrypted it by accident and then you allow it to go on, right? Yes, Your Honor. Isn't that deciding that you did it by accident enough of a? I think what Your Honor is getting at is perhaps there's a decision, and we don't dispute that there is at some point an upstream decision to allow or do something else. There are two responses to that. The first is this, I think, ties into the argument that they make on appeal for affirmance and alternative ground, which is that IPUB, which is the reference here, has what it calls access policies that make a decision as to what to do to a packet. The board made abundantly clear that the access policies, which correspond to the decision, that's the matching and that's deciding what to do with the packet. The board made clear that that is not the corresponding action. It said that that corresponds, for lack of a better word, to limitation 1e, the matching stage. It said that the corresponding action is merely allowing full stop. And the second answer is just to return again to the specification, which makes clear that even though there is a decision, there is a decision made before you allow, there's a decision made before you block, there's a decision made before these things, but the board said the blocking is the action and said the allowing is the action. It's not some sort of upstream decision that preceded the action. And the claims make this clear, too, because you can't re-encrypt and transmit unless you allow. So everything that is transmitted is allowed. The corresponding action does no work there if all it's doing is jumping over the corresponding action step.  Well, would you agree that stuff that's allowed, that's what 1g is about? 1g would include packets that are allowed. Well, but that is our point, Your Honor, that because 1g includes packets that are allowed, the corresponding, under the board's theory, in which the corresponding action is the allowing, it's rendered redundant, because you could get there just by virtue of 1g. Because 1g, Your Honor, I think is correct.  I mean, I'm not seeing your logic of your saying that it's redundant, because 1g says re-encrypting after performing the corresponding action. And you're agreeing that allowed packets could come under 1g for purposes of re-encrypting, which suggests that the corresponding action occurred in 1f, and that was to allow. I mean, I think I just disagree. I think for that to work, Your Honor, the corresponding action has to be before the re-encrypting and re-transmission. I agree. Right. So if the corresponding action happens in 1f. And if the corresponding action is allow, then it can't also be allowing in 1g. That's my only point there, Your Honor, is that. But we're not saying allowing. 1g is about re-encrypting after performing the corresponding action. Right. Yeah, I understand. Doesn't that make sense? I mean, I think it makes sense. I still think it renders the corresponding action redundant, because even if you took out 1f, you would still have re-encrypting and transmitting. You could just remove 1f entirely in this case, and I think Your Honor's understanding would still happen. But again, just turning to the specification, even aside from the claim language, and I think the claim language makes clear that it needs to be an action, and I think allowing is the opposite of an action. It needs to be an action taken on the packet, and it needs to be an action distinct from re-transmitting. That's what the claim says. But the specification makes abundantly clear, and the Board did not dispute, that it is the application of intermediating logic that is the corresponding action. And the intermediating logic is allowing plus. That's why one of the examples that it gives in the specification, in addition to transforming, is allowing plus capturing and logging. If allowing was enough, it would have just said allowing. But Figure 1 of the specification makes clear that merely allowing does not entail the application of intermediating logic. And if you look at the Board's analysis of the Altman claim limitation, which I'll turn to in a second, on page 59, when discussing Altman, it says that the system determines what action should be taken. For example, no action, which is allowing the packet to proceed. The Board elsewhere seems to acknowledge that allowing is the absence of an action, and that is what the specification makes clear. It makes it clear in the figure. It makes it clear in the examples of the intermediating logic. And it makes it clear in the claim language. And the Board did not address any of those. All the Board said was that the examples of intermediating logic are not exhaustive. So there could be other types of intermediating logic. But that misses the point. We agree that they're not exhaustive. But what we disagree is that the patent makes expressly clear that there has to be some application of intermediating logic. That is the corresponding action. If you read the patent on page 93 of the appendix in column 6, it says that if there is a correspondence, then you move to the intermediating logic and the application of intermediating logic. The correspondence is the corresponding action. So a specification tells you that the corresponding action is the application of intermediating logic, full stop. It also tells you that when you merely allow, you are not applying any intermediating logic. And the Board did not make Your Honor's argument, which is that it's somehow this threshold decision. I think the Board expressly rejected that. If you look at page 32 of the appendix, which is also 32 of the written decision, when it's talking about whether or not Keysight had waived a particular argument based upon the access policies, it makes clear that applying the policy generates the decision. And that's at one E, that's at the matching step, that causes the system to perform the action. And it says the action is allowing the packet with or without logging it. So I think the Board's factual findings are inconsistent with the argument that a decision to allow is the allowing itself. If I could turn now to the Altman claim, Your Honor, the question here again is whether or not Altman anticipates performing a corresponding action on packets before those same packets are re-encrypted and transmitted. What Altman discloses is two computers that are relevant here. It calls it the SIA and the NMC. It's undisputed that the SIA does not perform a corresponding action. What it does is it decrypts and re-encrypts traffic in an ongoing process. And at the same time, it sends a copy of the plaintext packet to the NMC. So it's undisputed that if anything performs the corresponding action, it's the NMC. But it's also undisputed that the NMC operates only on copies of the plaintext packets. So any corresponding action that it performs is not performed on the copies of the packets that are actually sent back and forth by the SIA. The Board did not appreciate this. The Board simply said that because the SIA forwards this traffic in what it calls an ongoing basis, there is some sort of transmission that occurs after a corresponding action. What the Board did not address and what it did not find was that the corresponding action has to be on the same packets that are re-encrypted and transmitted. And the Board made another error here that I think collapses this issue to the same claim construction issue that I was just addressing. If you look at it ----  Can I ask you just to step back a moment on the issue you're addressing now about the same computing device or the same process, right? I'm not addressing the computing device limitation. I'm sorry. I'm addressing we made two Altman arguments. One is the computing device. I'd be mean to be discussing a different argument here. So if I could just step back and re-articulate it. One of our arguments is that Altman does not disclose performing a corresponding action on the packets before they're re-transmitted. This is separate from the question whether it has to be a single computer or two computers. Our argument is that because it is undisputed that the SIA and the NMC are these sort of two processes that occur, are acting in parallel, the NMC is only performing a corresponding action on copies of the packets, not on the original packets that are transmitted. But if you look at the Board's holding, what the Board held is that it said that although Altman does not state when the re-encryption occurs ---- and I'm sorry, this is on page 59 of the appendix ---- a person of skill would infer that the encryption towards the opposite party occurs after the NMC signals the decision to allow the  That's on page 59. On the next page, it reiterates that the NMC performs the corresponding action by, quote, instructing the SIA to allow the packet. It seems like what the Board is saying here is that the allowing is the corresponding action. If that is true, and I don't think Keysight reiterated that, but if that is true, this comes down to the same claim construction argument, which is whether allowing is a corresponding action. That was what we just talked about with respect to the IPUG reference. I understood Keysight to be relying on Altman because it showed something other than allowing. And that's why we said in our brief that Altman has to be addressing something other than allowing. But the Board seemed to focus simply on a decision to allow. So if that's the case, I would submit that this just becomes the same allowing issue. And I'll again note that the Board here said allowing is, quote, no action, which seems to undermine its assertion that allowing is a corresponding action. So just to recap, on this issue here with Altman, there are only three potential actions in play that are discussed by either Altman itself or the Board. There is blocking a packet, which is described as a consequent action that the NMC could perform. We know that blocking can't satisfy the claim limitation, because if a packet is blocked, it's not re-encrypted and transmitted. And the Board said that. The Board agreed. Sotomayor, do you want to save your rebuttal time? Oh, just give me 12 seconds, Your Honor, just to say that the only three actions here are blocking, allowing, and logging. Blocking can't do it because it's be a corresponding action because it's not retransmitted. Allowing, we would submit, doesn't qualify under our construction. And the logging is really, I think, the only thing in play here. But if the NMC logs and does anything to those packets, it's on the copies of the packets and not on the ones that are re-encrypted and transmitted. And I would like to save my remaining time, Your Honor. Thank you. Mr. Domenico. Good morning, Your Honors. May it please the Court. Gerard Donovan for Keysight. The 526 patent claims process for selectively decrypting and inspecting traffic that was already disclosed by both IPUG and Altman. Centripetal's appeal comes down to meritless procedural arguments and requests for this Court that ignore the Board's fact-finding and requests for this Court to re-weigh the evidence in its favor. Controlling standard of review does not provide a path to reversal. Well, if somebody's got at least one, if not more, claim construction arguments. Yes. Yes, Your Honor. They have two claim construction arguments. You don't need to reach those claim construction arguments because the fact-finding from the Board established invalidity even under the construction. Well, that's kind of surprised me, opening up your brief, because your lead argument on the several issues was there can be an alternative finding, which the Board never reached, and it often does. Sometimes it does alternatives, but it didn't do so in the case of corresponding action. And your lead argument defending ostensibly the Board's opinion was to an analysis that it didn't include a rely on. And that likely, if you look at our precedent at the most, if we reject the other argument, what the Board did, we would remand it for it to make it. So, frankly, it kind of took me aback that you weren't trying to defend the Board decision. You were trying to defend it on a basis that the Board never reached. Am I mistaken in how I'm viewing this? We viewed it as the Board's fact-finding establishing that alternative basis as well. So the Board, in describing how IPUG works, explained that it performs a process where it decrypts the packets, inspects them, and then speaking only for myself, I'd rather you went to the arguments which defend what the Board did, because I don't feel personally that I'm in a position to make that fact-finding that those observations that the Board didn't make. Yes, Your Honor. The Board construed corresponding action and a computing device in accordance with this Court's guiding principles, the intrinsic record, and those constructions in support of fairness. First, the Board correctly construed performing a corresponding action to not exclude an action of allowing traffic to continue after decryption. The claim language does not impose a narrow meaning of corresponding action. It doesn't carve out any specific actions. It doesn't exclude any specific actions. It doesn't exclude allowing. The Board addressed the claim differentiation argument that appellees advance and explained that allowing is not subsumed within the surrounding claim elements. You have the step of decrypting, and then you separately have the step of performing a corresponding action. Allowing is a corresponding action because if you do not allow, you never get to the following steps. You never get to the re-encryption or the transmission. So allowing has a separate scope. And that was addressed by the Board at Appendix 58. I'm sorry. At Appendix 12, where it addressed the claim differentiation and the different meanings between these different terms. The specification also doesn't exclude allowing as a corresponding action. The specification centrally acknowledges that the corresponding action is not before the Board, that it's not limited to the examples in the specification, but the specification's disclosure of the intervening logic reinforces the Board's construction. Well, I thought the Board rested more on the fact that the specification talks about blocking, and allowing is the opposite of blocking. It does. Yes, Your Honor, because blocking was what the specification disclosed as an example of intervening logic. And they explained that the specification's disclosure of performing the intervening logic on the packets, one example is blocking, and that shows that allowing would also be an example of a corresponding action. And that makes sense because the determination of whether or not to block a packet, in a cybersecurity sense, is also a determination of whether to allow it. I want to step back, and the 526 patent is disclosing, it touts as one of its benefits, a cybersecurity system that can selectively decrypt packets, inspect their contents, and this intervening logic allows it to inspect and determine whether or not to allow the packets. That's the cybersecurity purpose of this. When you're inspecting a packet for cybersecurity to determine whether or not to allow it, that determination to allow is probably the most significant action in the process because that's the threshold that has to be met before you get to the following steps of the re-encryption and transmission. And that's typical in security systems. When I came in downstairs, the security guards weren't passively allowing everyone into the courthouse. They inspect and they selectively allow. And this is exactly what the specification discloses. In addition, this is at Appendix 93, the 526 patent, where it's discussing the intermediating logic. This is expressly going through the yes avenue on the flowchart that Centripetal pointed to in its argument. This is not skipping. It also discloses the option to have the no path, where you don't inspect and you just pass on the packet. You just re-encrypt and send it on. But here, what we're saying is that allowing is an affirmative action. That's looking at the contents and determining to allow it. And that's what the board construed. This is an affirmative action. With regard to their superfluidity argument on 1G, is it correct that you could allow the packet under 1F and then do something else with it rather than transmit the re-encrypted packet to its intended destination? So the superfluidity argument, as I understand it, would say that having 1F and 1G, if allowing satisfies 1F, then it makes 1G superfluous. Right. And that's incorrect, which the board analyzed and found, because allowing is the determination of what to do with the packet. It's the granting permission for the packet to go on. The re-encryption is then the step of taking that packet that was allowed and encrypting it again, and the transmission is sending it on. And so those are each independent steps. You don't get to the re-encryption or the transmission unless you have an allow. And that way, the patent is exactly like the prior art, that have these same steps of selectively decrypting the packets and then analyzing the plain text content of the decrypted packets and determining whether to allow or block those packets. You have that in IPUB's five-step process, where it's only, as the board explained, if allowed, that you proceed to the re-encryption and transmission. And you have that in Altman, where it explains that after you have the decryption, and this is the maintaining step being performed by the SIA, and then while you're maintaining that connection, the NMC is going to inspect the contents of the packet, and it can make determinations. It can perform a consequent action that expressly discloses that. One of the examples it gives is you can block that packet. And that determination of whether or not to block is also a disclosure, as counsel pointed out, of whether or not to allow. Again, that's an affirmative step. Now, Altman also discloses generally performing a consequent action. It's not limited to allow. But the fact that it has that block or allow logic during the maintaining step shows that that step is being performed prior to the re-encryption and transmission. Because you can't re-encrypt and transmit the packet and block it if you're doing the re-encryption and transmission before the NMC analyzes the contents of the packet. And that's where Dr. Goodrich's testimony came in. For the Altman reference, at the institution decision, the board found the prior art at least suggested the claim limitation. And then throughout the development of the record, Dr. Goodrich, patent owner's expert, testified explaining that the disclosure of Altman, he contends that it's only operating on copies of the packets, and they're still being sent on while the NMC is inspecting them. But Altman expressly discloses an action of blocking the packets. That's the cybersecurity purpose. And he explained that, well, if it was transmitting the packets, even as the maintaining step was going on, then you wouldn't be able to block them at the NMC step. On the totality of the record, the board then found that Altman does in fact anticipate, because it discloses blocking the packets, which shows that the comparison, excuse me, and the performing the consequent action by the NMC is happening prior to the re-encryption transmission. So, again, that addresses both the differentiation between these different steps in the claim, but it also rebutts the process argument that patent owners were making, saying that Altman is operating only out of band or on copies of packets and not taking those actions prior to re-encryption and transmission. Since it expressly discloses that the consequent action can be blocking, that shows the temporal arrangement between the different claim elements and that it clearly is performing it prior to the re-encryption and allowance. I also want to briefly address counsel's reference to the board's holding that IPUG discloses merely allowing the packets. And the board did use the language that IPUG does in fact disclose nearly allowing, but that was in the context of analyzing the reference after construing the claims and explaining that allowing is an action that's sufficient to meet the corresponding action because the claims don't limit it and that's consistent with the specification. The board also, well, the board didn't say that Altman, sorry, IPUG only discloses merely allowing. It was finding that it was sufficient to disclose what's required by the claims. But its factual explanation of IPUG goes into the steps, again, the five-step process it takes to inspect the packets and to determine whether or not to allow them. And it's only if they're allowed that they get to those later steps. And so, again, IPUG is performing the exact same process as is disclosed in the 526 patent and is claimed. I do want to briefly address the one-processor, two-processor argument. There's, I think, two arguments here. One is the claim construction argument from the board. And there's also the factual basis where here the board did find as a secondary basis that Altman discloses the claims in any event. As I've put... Can I ask you about the first part of that? And I didn't get, your friend didn't have a chance to do it. And so if he disagrees, he can't do it. If he disagrees, maybe he can spend five seconds the same way he disagrees. Is it your understanding that on the claim construction, the same claim construction would necessarily apply to 1 and claim 11? Or could it be that you say, yes, 1 is 1 only, but claim 11 allows for more? Could you have a dispirit? I think on the facts here, no. Under both claims, it's 1 or more for the processor or the computing device. As a hypothetical, you could have it for different claims. But here the question is construing the claims in light of the specification. The general rule from this Court is that A means 1 or more, and a V will refer back to the antecedent A. The exception to that rule is when there's a clear evidence in the specification that someone intended the A to mean 1 or the the to refer back to a single 1. Here we have the opposite. We have expressed language in the specification. Well, isn't there kind of another exception based on this antecedent basis thing? I mean, we had cases that allow for construing it as 1 because of the antecedent basis. Yes. So the DACA decision is one that Centripetal points to where this Court did look at the specification. There it was referring back to a single, I believe it was a processor. And the specific limitations there referring to the display, the user interface on the device. And so with the total context, it was clear that it was a single device. The same decision explained that the general rule still is that A means 1 or more. In the other claims that were analyzed there, the Court found that A did not mean only a single, only a single device. And so it was only in the specific circumstance where the record supported construing it narrowly that the Court reached that conclusion. That also was a specific factual issue where the A was in the preamble and it was saying the antecedent back to the preamble impacted it. But here I think it's more of the general issue that while the claims say a processor, a computing device, and then they do refer back to that in later claim elements, there's nothing in the claim that says it's only a single one. And what the specification expressively discloses is that these are all exemplary embodiments and they can be distributed over a network and it can be done in different ways. And so reading those claims in light of the specification shows that it should not be, neither claim 1 or 11, should be narrowly construed to a single computing device here. But in any event, here the Board also did find that Altman discloses a single processor implementation. This is an issue where after institution, Centripetal argued that Altman has the SIA and NMC as different computers and, therefore, it doesn't meet the claim element. We explained that Altman expressly discloses that these can be implemented in either a processor or processors, which shows that it can be implemented in a single processor. The Board found as a factual matter that that disclosure of Altman shows that the even if Centripetal's construction were adopted, it would still anticipate and render obvious. To just very briefly address IFUG qualifying as prior art. Very briefly. Very briefly. I would just say that both Dr. Prakash's testimony and the archive webpage itself provide substantial evidence to support the Board's findings. That should also be affirmed. And with that, I believe I'm out of time. I'll ask the Court additional questions. Thank you, Counsel. Thank you. Mr. Lerman has some rebuttals. Take two minutes if you need it. I will, Your Honor. On Judge Prost's question about the computing device, which I didn't focus on, the Board only spoke about the computing device, and I think it treated the computing device and processor the same. But the only thing it discussed is we do not limit the computing device. I don't think so, Your Honor. And our main argument on the merits there is the Board just didn't even address this antecedent-based rule. It addressed a means-plus-function claim that was not there. I think that's wholly irrational. And then its ultimate holding was that this would have been obvious in light of a combination that was not asserted or discussed. So I think the whole computing issue is just unreasoned from start to finish and should be overturned for that basis. Picking up where he last left off before then, his final argument was his first, which is about what IPUG discloses and the factual findings. That is the argument that was not the basis of the decision below that they make for the first time on appeal. The Board very clearly said that IPUG, quote, merely allows. And it described the claim construction issue as whether, quote, merely allowing is the corresponding action. There is no dispute that the only factual findings made were that merely allowing is what IPUG teaches and then the legal conclusion that merely allowing satisfies the claim limitation. All these other things about the access policies and the decisions are arguments that were not made below and that were not addressed by the Board. And I think that gets to Judge Burroughs' question, which I just want to reiterate, in terms of the decision and about something having to happen for it to allow. They didn't argue and the Board did not find that the decision was the action. The decision happens at a different stage of our claim limitation, which is the matching step. That's the corresponding. The Board held that allowing alone is the corresponding action here. And that's clear because blocking, too, is the result of a decision. But the Board said blocking is the action, not the decision to block. Your Honor, Judge Prost raised the question that the Board relied on blocking. That was its sole affirmative argument, that because blocking is an action and then because allowing is the opposite of blocking, allowing must also be an action. With respect, I think that's a logical fallacy. Just because X satisfies a claim limitation does not mean that not X satisfies a claim limitation. That's what the Board held. The Board held that the opposite of an action satisfies the claim limitation requiring a corresponding action. That was its only affirmative action argument for in support of this claim construction argument. Kennedy. I'll stop there. Counsel, as you can see. Can I get one more question? Certainly. Can you just briefly, because he's flagged the clock for me, IPUG as priority? We think IPUG is closer to the Acceleration Bay reference. The Board did not find that it was searchable or indexed in any way. I understand that's not the sole factor that this Court has looked to, but it is a factor that the Court has looked to. And in both Acceleration Bay and Blue Calypso, this Court noted that the lack of indexing and a meaningful search function rendered a prior art that is posted on their website not publicly accessible for purposes of this requirement. There's no dispute that this was not indexed and not searchable. And so our submission is that, like in Acceleration Bay, you would have to, quote, skim through the website to find the document, which really means you need to already know that it's there. It's like searching for a needle in a haystack, similar to Acceleration Bay and Blue Calypso. So we would submit that it's not prior art in the first place for that reason, Your Honor. Thank you, counsel. Both counsel, the case is submitted.